# Exhibit 1

# Exhibit 1

Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
(775) 453-0112
lukebusby@pm.me

Lauren Gorman, Esq.
Nevada State Bar #11580
777 Forest Street
Suite A
Reno, Nevada 89509
(775) 742-6129
lgorman@laurengormanlaw.com

*Attorneys for the Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

NASSROLLAH  BEHMARD,

Plaintiff,

V.

BYLLY BOTANNY; REX WEEKS; JOSEPH BENSON; NAPHCARE INC.; DARIN BALAAM, in his official capacity as Sheriff of Washoe County; DOE NURSE; DOE UNIT OFFICER 1; DOE UNIT OFFICER 2; and DOE FEMALE SERGEANT.

Defendants.

Case No.: 3:23-cv-00607-MMD-CSD

**SECOND AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

COMES NOW Plaintiff Nassrollah Behmard, by and through his appointed pro bono counsel, Luke A. Busby, Esq., of Luke Andrew Busby, Ltd., and Lauren D. Gorman, Esq., of Gorman Law PLLC, and for his Second Amended Complaint against Defendants Bylly Botanny, Rex Weeks, Joseph Benson, NaphCare, Inc., Darin Balaam in his official capacity as Sheriff of Washoe County, Doe Nurse, Doe Unit Officer 1, Doe Unit Officer 2, and Doe Female Sergeant, complains and alleges as follows.

## I. NATURE OF THE ACTION

1.      This is a civil-rights action under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured to Plaintiff by the Fourteenth Amendment to the United States Constitution. While a pretrial detainee at the Washoe County Detention Center ("WCDC"), Plaintiff suffered a months-long pattern of objectively unreasonable medical indifference by custodial and medical staff that caused him to become septic, to endure eight surgeries and three emergency hospitalizations, to contract serious infections, and to sustain permanent injuries, including a lifelong dependence on blood-thinning medication.

## II. JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) because this action arises under the Constitution and laws of the United States and seeks redress for the deprivation, under color of state law, of rights secured by the Constitution.

3.      Venue is proper in the District of Nevada under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Washoe County, Nevada, within this District.

2

### III. PARTIES

4.      Plaintiff Nassrollah Behmar, at all times relevant to this Second Amended Complaint, was a pretrial detainee in the custody of the Washoe County Sheriff's Office at WCDC. Plaintiff is presently incarcerated at the Federal Correctional Institution, Lompoc, California.

5.      Defendant Bylly Botanny was, at all relevant times, a Nurse Practitioner responsible for Plaintiff's medical care at WCDC and acted under color of state law. Defendant Botanny is sued in her individual capacity.

6.      Defendant Rex Weeks was, at all relevant times, a Physician's Assistant responsible for Plaintiff's medical care at WCDC and acted under color of state law. Defendant Weeks is sued in his individual capacity.

7.      Defendant Joseph Benson was, at all relevant times, a physician responsible for Plaintiff's medical care at WCDC and acted under color of state law. Defendant Benson is sued in his individual capacity.

8.      Defendant NaphCare, Inc. is a foreign corporation that contracts with the Washoe County Sheriff's Office to provide medical care to inmates at WCDC. For purposes of 42 U.S.C. § 1983, NaphCare, Inc. acted under color of state law and is subject to municipal liability.

9.      Defendant Darin Balaam is the Sheriff of Washoe County and is sued solely in his official capacity. Pursuant to the Screening Order on First Amended Complaint (ECF No. 22, filed March 17, 2026), and Federal Rule of Civil Procedure 25(d), Sheriff Balaam was substituted for the former defendant designated "Washoe County Sheriff."

10. Defendant Doe Nurse was, at all relevant times, a nurse at WCDC employed by NaphCare, Inc. who acted under color of state law. Doe Nurse's true name is presently unknown to Plaintiff and will be substituted upon its discovery and leave of Court.

11. Defendant Doe Unit Officer 1 was, at all relevant times, a custodial officer at WCDC employed by the Washoe County Sheriff's Office who acted under color of state law. Doe Unit Officer 1's true name is presently unknown to Plaintiff and will be substituted upon its discovery and leave of Court.

12. Defendant Doe Unit Officer 2 was, at all relevant times, a custodial officer at WCDC employed by the Washoe County Sheriff's Office who acted under color of state law. Doe Unit Officer 2's true name is presently unknown to Plaintiff and will be substituted upon its discovery and leave of Court.

13. Defendant Doe Female Sergeant was, at all relevant times, a custodial supervisor at WCDC employed by the Washoe County Sheriff's Office who acted under color of state law. Doe Female Sergeant's true name is presently unknown to Plaintiff and will be substituted upon its discovery and leave of Court.

14. At all relevant times, medical staff at WCDC were employed by NaphCare, Inc. and custodial staff were employed by the Washoe County Sheriff's Office.

## IV. FACTUAL ALLEGATIONS

15. Plaintiff Nassrollah Behmard arrived at the Washoe County Detention Center ("WCDC") on January 24, 2023, as a pretrial detainee.

16. Approximately three days after his arrival, Plaintiff developed severe pain behind his left buttocks and left leg. The affected area felt like a hard lump, which Plaintiff believed might be a boil, and it caused him great pain.

17.    Plaintiff reported this condition to Defendant Doe Nurse during morning sick call. Doe Nurse told Plaintiff that she would report the condition to the infirmary and that Plaintiff would be seen soon.

18.    Over the following four or five days, Plaintiff repeatedly returned to sick call and complained that the lump was growing larger and more painful.

19.    On each of those occasions, either Doe Nurse or Defendant Doe Unit Officer 1 ordered Plaintiff to return to his cell without any health screening, directing him to leave under threat of punishment and telling him to go back to his cell "or else."

20.    On none of these occasions did Doe Nurse or Doe Unit Officer 1 check Plaintiff for symptoms, examine the lump, or otherwise investigate his complaints of a worsening and acute inguinal condition before sending him away under threat of punishment.

21.    In triaging Plaintiff's repeated medical requests, Doe Nurse repeatedly declined to expedite Plaintiff's acute medical needs, and Doe Unit Officer 1 repeatedly declined to coordinate with medical staff regarding those needs.

22.    Plaintiff received no medical screening for his inguinal condition until February 2, 2023—approximately seven days after he first reported it—and only after his condition had deteriorated into a medical emergency.

23.    On February 2, 2023, WCDC staff observed Plaintiff dragging himself along the tier in pain while holding onto his left buttocks. Staff saw Plaintiff trip twice that morning, fail to rise for food, complain of being cold, walk stooped over in pain, and suffer from diarrhea, before he passed out on the tier.

24. Only after Plaintiff collapsed was he brought to the infirmary. There, medical staff determined that Plaintiff had an inguinal infection that had left his groin red and swollen and his scrotum grossly enlarged.

25. Medical staff sent Plaintiff to emergency care at an outside hospital. A hospital physician advised jail staff that Plaintiff was septic and might not survive.

26. Plaintiff remained in the hospital's intensive-care unit from February 2 to March 31, 2023, and underwent seven surgeries. Plaintiff was later told by the United States Marshals Service that he died three times during those surgeries.

27. While hospitalized, Plaintiff contracted Methicillin-resistant Staphylococcus aureus and gangrene. As a result of his surgeries, one of Plaintiff's testicles was permanently embedded in his leg, he received numerous skin grafts to his inguinal area, and he underwent a diverting colostomy so that his wounds could heal.

28. Plaintiff was eventually returned to WCDC. On or about April 1, 2023, Plaintiff reported to jail staff that his intestine had protruded from his stomach and that he could not push it back in, and he further complained that he had not been provided a correctly sized colostomy bag.

29. For approximately three days, Plaintiff reported his hernia condition and his need for a correctly sized colostomy bag to jail staff and received no treatment.

30. In response to these complaints, Defendant Doe Unit Officer 2 accused Plaintiff of "manipulating staff" and sent him to solitary confinement as punishment for seeking medical care.

31.    Defendant Doe Female Sergeant approved Plaintiff's placement in solitary confinement without conducting or ordering a medical screening and without examining Plaintiff's protruding intestine.

32.    While Plaintiff was in solitary confinement, Doe Unit Officer 2 discarded Plaintiff's personal property, including his upper denture. The United States Marshals Service later prevailed upon WCDC to pay Plaintiff $2,000 for the discarded denture.

33.    In placing, and approving the placement of, Plaintiff in solitary confinement without any medical screening, Doe Unit Officer 2 and Doe Female Sergeant declined to coordinate with medical staff regarding Plaintiff's acute medical needs.

34.    On April 4, 2023, a medical screening determined that Plaintiff suffered from an intestinal prolapse, with six to seven inches of his intestine exposed. Plaintiff was again rushed to emergency care at an outside hospital, where he underwent another emergency surgery.

35.    Also on April 4, 2023, Plaintiff was examined by Defendant Bylly Botanny, a Nurse Practitioner, who was assisted by Defendant Rex Weeks, a Physician's Assistant. Botanny escalated Plaintiff's level of care to a higher level, and Defendant Dr. Joseph Benson agreed that Plaintiff required emergency care.

36.    At the outside hospital, staff discovered that Plaintiff's colostomy had reversed due to infection, and another emergency surgery was performed. To reduce the risk of blood clots following that surgery, the hospital prescribed Plaintiff blood-thinning medication.

7

37.     Plaintiff returned to WCDC on or about April 7, 2023. Weeks kept Plaintiff in the infirmary for observation and noted in Plaintiff's medical record that custodial staff suspected that Plaintiff "may have sabotaged his own site previously."

38.     After his return, Plaintiff was housed in the infirmary for approximately eight days. Plaintiff did not receive his prescribed blood-thinning medication while in the infirmary, nor did he receive it after being returned to the general population.

39.     Botanny, Weeks, and Dr. Benson were responsible for Plaintiff's medical care at the jail.

40.     Botanny, Weeks, and Dr. Benson failed to document, follow up on, or provide the blood-thinning medication that the hospital had prescribed as part of Plaintiff's post-surgical care. Botanny stated that the medication had been missed because she "was too busy headed."

41.     Less than a month after returning to WCDC, on or about April 28, 2023, Plaintiff complained to a nurse of calf pain and swelling and of chest pain and tightness. He was sent to the hospital for treatment—his third emergency hospital trip in three months—where he was found to have massive blood clots in his left leg and left lung.

42.     As a result of the uncontrolled clotting, Plaintiff must take blood-thinning medication twice daily for the rest of his life.

43.     At all relevant times, the medical staff at WCDC, including Botanny, Weeks, and Dr. Benson, were employed by Defendant NaphCare Inc., a private entity that contracts with the Washoe County Sheriff's Office to provide medical care to inmates and detainees at WCDC.

44.     At all relevant times, the custodial staff at WCDC, including Doe Unit Officer 1, Doe Unit Officer 2, and Doe Female Sergeant, were employed by the Washoe County Sheriff's Office, for which Defendant Darin Balaam serves as the Washoe County Sheriff.

45.     Across the events alleged above, Plaintiff experienced a pattern of medical indifference that spanned months, involved acts and omissions by both medical and custodial staff, and resulted in three emergency trips to an outside hospital and eight surgeries.

46.     Custodial and medical staff twice delayed providing Plaintiff a medical screening for his worsening and acute symptoms.

47.     Medical staff twice failed to follow post-surgical instructions for Plaintiff's care, first by failing to provide a correctly sized colostomy bag and later by overlooking his prescribed post-surgical blood-thinning medication.

48.     Custodial staff twice punished Plaintiff for seeking medical care, first by placing him in solitary confinement and later by holding him in the infirmary.

49.     On three occasions, custodial and medical staff allowed Plaintiff's medical conditions to deteriorate into emergencies before providing a medical screening.

50.     Medical staff twice failed to follow up on Plaintiff's needs after he returned from emergency hospital stays.

51.     Reasonable jail and medical officials would have reassessed their policies and customs, training, supervision, and discipline after Plaintiff's week-long complaints of worsening pain and swelling were ignored until he was rushed to the hospital suffering from sepsis.

52.     Nearly two months separated that first incident from the incidents that followed, affording jail and medical officials time to train and supervise their staff regarding coordinating, communicating, documenting, and following up on inmates' serious medical needs. The incidents of medical indifference nevertheless continued.

53.     Plaintiff's injuries—including but not limited to sepsis, emergency colostomy care, and emergency blood-clot care—were caused by NaphCare's and Washoe County's policies regarding the handling of inmates' acute medical conditions, and/or by their respective policies or customs of failing to train, supervise, and discipline their staff in the handling of inmates' serious medical needs.

## V. CAUSES OF ACTION

## COUNT I

**Fourteenth Amendment — Deliberate Indifference to Serious Medical Needs**

**(Delay in Diagnosing and Treating Inguinal Condition)**

**(Against Doe Nurse and Doe Unit Officer 1)**

54.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

55.     As a pretrial detainee, Plaintiff's claim for inadequate medical care arises under the Due Process Clause of the Fourteenth Amendment and is evaluated under an objective deliberate-indifference standard.

56.     Doe Nurse and Doe Unit Officer 1 each made an intentional decision, over the course of several days, not to expedite or provide Plaintiff a medical screening and to return him to his cell under threat of punishment despite his repeated complaints that a hard, painful, and enlarging lump in his inguinal area was worsening.

57.    These conditions placed Plaintiff at a substantial risk of suffering serious harm.

58.    Doe Nurse and Doe Unit Officer 1 did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved. An expedited medical screening was a reasonable and available alternative to sending Plaintiff away without examination.

59.    By failing to take such measures, Doe Nurse and Doe Unit Officer 1 caused Plaintiff's injuries, including the worsening of his pain and swelling, sepsis, and the need for emergency medical care and numerous surgeries.

60.    As a direct and proximate result, Plaintiff suffered and continues to suffer serious physical injuries, permanent bodily harm, pain and suffering, and other damages in an amount to be proven at trial.

**COUNT II**

**Fourteenth Amendment — Deliberate Indifference to Serious Medical Needs**

**(Delay in Diagnosing and Treating Hernia Condition)**

**(Against Doe Unit Officer 2 and Doe Female Sergeant)**

61.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

62.    Doe Unit Officer 2 and Doe Female Sergeant each made an intentional decision not to coordinate with medical staff regarding Plaintiff's acute needs when, following his colostomy surgery, Plaintiff reported that his intestine had protruded from his stomach and that he had not received a correctly sized colostomy bag. Doe Unit Officer 2 instead charged Plaintiff with "manipulating staff" and sent him to solitary confinement,

and Doe Female Sergeant approved that placement without a medical screening and without examining Plaintiff's protruding intestine.

63.    These conditions placed Plaintiff at a substantial risk of suffering serious harm.

64.    Doe Unit Officer 2 and Doe Female Sergeant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved. An expedited medical screening was a reasonable and available alternative.

65.    By failing to take such measures, Doe Unit Officer 2 and Doe Female Sergeant caused Plaintiff's injuries, including the worsening of his pain and swelling and the need for emergency surgery to correct his hernia condition.

66.    As a direct and proximate result, Plaintiff suffered and continues to suffer serious physical injuries, pain and suffering, and other damages in an amount to be proven at trial.

## COUNT III

### Fourteenth Amendment — Deliberate Indifference to Serious Medical Needs
### (Failure to Provide Prescribed Blood-Thinner Medication)
### (Against Bylly Botanny, Rex Weeks, and Joseph Benson)

67.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

68.    After Plaintiff underwent emergency surgery to correct his reversed colostomy, the hospital prescribed him blood-thinning medication to protect against blood

clots. Botanny, Weeks, and Dr. Benson were responsible for Plaintiff's medical care upon his return to the jail.

69.    Botanny, Weeks, and Dr. Benson each made an intentional decision not to document or follow up on the surgeon's post-operative instructions, with the result that Plaintiff received none of his prescribed blood-thinning medication during approximately eight days in the infirmary or after his return to the general population.

70.    Ignoring the surgeon's post-surgical instructions placed Plaintiff at a substantial risk of suffering serious harm.

71.    Botanny, Weeks, and Dr. Benson did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved. Documenting the post-surgical instructions, following up on those instructions, and documenting the provision of that care were reasonable and available alternatives.

72.    By failing to take such measures, Botanny, Weeks, and Dr. Benson caused Plaintiff's injuries. Plaintiff developed massive blood clots in his calf and lung, required a third emergency hospitalization, and now must take blood-thinning medication twice daily for life.

73.    As a direct and proximate result, Plaintiff suffered and continues to suffer serious physical injuries, permanent bodily harm, pain and suffering, and other damages in an amount to be proven at trial.

**COUNT IV**

**Fourteenth Amendment — Monell Liability**

**(Against NaphCare, Inc. and Sheriff Darin Balaam, in his Official Capacity)**

13

74.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

75.     Defendant NaphCare, Inc. is a private entity that contracts with the Washoe County Sheriff's Office to provide medical care to inmates at the Washoe County Detention Center, and Washoe County is sued through Defendant Darin Balaam in his official capacity as Sheriff. Each is responsible for its own policies and customs, and not for the conduct of its employees on a respondeat superior theory. Plaintiff suffered a constitutional deprivation, as alleged in Counts I through III above, that was the product of a deliberate policy, custom, or practice of these entities, which was the moving force behind the violation.

76.     An official policy for these purposes includes the decisions of the entity's policymakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. A policy is a deliberate choice to follow a course of action made from among various alternatives by the officials responsible for establishing final policy on the subject, and a policy may be one of action or of inaction.

77.     NaphCare, Inc. and Washoe County each maintained policies or customs regarding the handling of inmates' acute medical conditions, and each failed to train, supervise, and discipline its staff in coordinating, communicating, documenting, and following up on inmates' serious medical needs. That failure amounted to deliberate indifference to the constitutional rights of the inmates with whom the staff came into contact, and it reflected a conscious choice rather than mere negligence. The need for adequate training, supervision, and discipline in these respects was obvious, and the inadequacy of the entities' policies and customs was so likely to result in the violation of

14

constitutional rights that the policymakers responsible may reasonably be said to have been deliberately indifferent to that need.

78.    Plaintiff experienced a pattern of medical indifference that spanned months, involved acts and omissions by both medical staff employed by NaphCare, Inc. and custodial staff employed by the Washoe County Sheriff's Office, and resulted in three emergency hospitalizations and eight surgeries, as detailed above. Reasonable jail and medical officials would have reassessed their policies, customs, training, supervision, and discipline after the first incident, in which the delay of a detainee's week-long complaints of worsening pain and swelling resulted in his being rushed to the hospital suffering from sepsis. Instead, incidents of medical indifference continued even though NaphCare, Inc. and Washoe County had nearly two months after the first incident to train and supervise their respective staff, reflecting a conscious choice and a policy or custom of inaction.

79.    The policies and customs of NaphCare, Inc. and Washoe County regarding the handling of inmates' acute medical conditions, together with their respective policies or customs of failing to train, supervise, and discipline their staff in the handling of inmates' serious medical needs, were the moving force behind Plaintiff's injuries, including his sepsis, his emergency colostomy care, and his emergency blood-clot care.

80.    As a direct and proximate result, Plaintiff suffered and continues to suffer serious physical injuries, permanent bodily harm, pain and suffering, and other damages in an amount to be proven at trial.

## COUNT V

### First Amendment — Retaliation for Protected Conduct

### (Punishment for Seeking Medical Care and Reporting Staff Misconduct)

**(Against Doe Unit Officer 2 and Doe Female Sergeant)**

81.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

82.     At all relevant times, Plaintiff, as a pretrial detainee, retained his First Amendment rights to petition jail authorities for the redress of grievances, to report the misconduct of jail and medical staff, and to seek medical care for his serious medical needs without fear of reprisal.

83.     Plaintiff engaged in protected conduct when, on and after April 1, 2023, he repeatedly reported to jail staff that his intestine had protruded from his stomach following his colostomy surgery, that he could not push it back in, and that he had not been provided a correctly sized colostomy bag, and when he complained that staff were failing to address these serious medical needs.

84.     In response to, and because of, Plaintiff's protected conduct, Defendant Doe Unit Officer 2 took adverse action against Plaintiff by accusing him of "manipulating staff" and sending him to solitary confinement as punishment for seeking medical care, and Defendant Doe Female Sergeant took adverse action against Plaintiff by approving his placement in solitary confinement without conducting or ordering a medical screening and without examining his protruding intestine.

85.     While Plaintiff was held in solitary confinement as a result of that placement, Doe Unit Officer 2 took further adverse action against Plaintiff by discarding his personal property, including his upper denture.

86.     Plaintiff's protected conduct was the substantial and motivating factor behind these adverse actions, as demonstrated by Doe Unit Officer 2's contemporaneous

16

statement charging Plaintiff with "manipulating staff" for the very act of seeking medical care.

87.    The adverse actions taken by Doe Unit Officer 2 and Doe Female Sergeant would chill a person of ordinary firmness from continuing to engage in protected conduct, including reporting serious medical needs and complaining about the failure of staff to address them.

88.    The adverse actions did not reasonably advance any legitimate correctional goal. Placing a post-surgical detainee with an exposed and protruding intestine in solitary confinement, without any medical screening and without examining his condition, served no legitimate penological purpose and was instead imposed to punish Plaintiff for seeking medical care.

89.    As a direct and proximate result, Plaintiff suffered and continues to suffer serious physical injuries, the worsening of his hernia condition, pain and suffering, and other damages in an amount to be proven at trial.

**COUNT VI**

**Fourteenth Amendment — Unconstitutional Punishment of a Pretrial Detainee**

**(Placement in Solitary Confinement as Punishment)**

**(Against Doe Unit Officer 2 and Doe Female Sergeant)**

90.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

91.    At all relevant times, Plaintiff was a pretrial detainee who had not been convicted of any crime. Under the Due Process Clause of the Fourteenth Amendment, Plaintiff had the right to be free from punishment, and any condition or restriction imposed

upon him was required to be reasonably related to a legitimate governmental objective and not excessive in relation to that objective.

92.     On or about April 1, 2023, Defendant Doe Unit Officer 2 placed Plaintiff in solitary confinement, and Defendant Doe Female Sergeant approved that placement. Doe Unit Officer 2 expressly imposed the placement as punishment, accusing Plaintiff of "manipulating staff" for seeking medical care for his protruding intestine and his need for a correctly sized colostomy bag.

93.     Plaintiff's placement in solitary confinement was not rationally related to any legitimate governmental objective. Plaintiff had committed no disciplinary infraction; he had reported an acute, objectively serious post-surgical medical condition. Neither Doe Unit Officer 2 nor Doe Female Sergeant conducted or ordered any medical screening before or upon the placement, and neither examined Plaintiff's protruding intestine.

94.     In the alternative, even if some governmental objective could be identified, the placement of a post-surgical detainee with six to seven inches of exposed intestine in solitary confinement, without medical screening or examination, was excessive in relation to any such objective.

95.     The purpose and effect of the placement was punitive. Plaintiff was punished, without any legitimate justification and prior to any conviction, for the act of seeking medical care.

96.     As a direct and proximate result, Plaintiff suffered and continues to suffer serious physical injuries, the worsening of his hernia condition, punitive isolation while gravely ill, pain and suffering, and other damages in an amount to be proven at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants and award the following relief.

a. Plaintiff seeks a declaration that the acts and omissions described above violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

b. Plaintiff seeks compensatory damages against all Defendants, in an amount to be proven at trial, for the physical injuries, permanent bodily harm, pain and suffering, and other losses he sustained as a consequence of the deprivation of his constitutional rights.

c. Plaintiff further seeks punitive damages against Defendants Bylly Botanny, Rex Weeks, and Joseph Benson, and against Doe Nurse, Doe Unit Officer 1, Doe Unit Officer 2, and Doe Female Sergeant, in their individual capacities, in an amount sufficient to punish and to deter similar conduct.

d. Plaintiff further seeks his reasonable attorney's fees and costs of suit incurred in this action. Plaintiff further seeks such other and further relief as the Court deems just and proper.

## VII. PRAYER FOR RELIEF

Pursuant to federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

(signature on next page)

///

///

19

Dated:  Jul 15, 2026

By: _/s/ Luke Busby, Esq._____
Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
(775) 453-0112
lukebusby@pm.me

By: _/s/ Lauren Gorman, Esq.__
Lauren Gorman, Esq.
Nevada State Bar #11580
777 Forest Street
Suite A
Reno, Nevada 89509
(775) 742-6129
lgorman@laurengormanlaw.com

*Attorneys for the Plaintiff*

20

**CERTIFICATE OF SERVICE**

I certify that on the date shown below, I caused service to be completed of a true and correct copy of the foregoing by:

_____ personally delivering;

_____ delivery via Reno/Carson Messenger Service;

_____ sending via Federal Express (or other overnight delivery service);

\_\_\_\_\_ depositing for mailing in the U.S. mail, with sufficient postage affixed thereto; or,

\_\_\_\_\_ delivery via electronic means (fax, eflex, NEF, etc.) to:

Dated:  Jul 15, 2026

By: _/s/ Luke Busby, Esq._____
Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
Phone (775) 453-0112
lukebusby@pm.me
*Attorney for the Plaintiff*

21